# Exhibit 38

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

------------------------------------------

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

ANTHONY BAFFO,

               Complainant,

-against-

NEW YORK INSTITUTE OF TECHNOLOGY,

               Respondent.

------------------------------------------

CASE NO: 10137443

**AFFIDAVIT OF**
**ROBERT J. RIZZUTO**

STATE OF NEW YORK  )
                         : ss
COUNTY OF NASSAU  )

Robert J. Rizzuto, being duly sworn, deposes and says:

1. I am the Director of Dining Services for New York Institute of Technology ("NYIT"). I have been employed by NYIT for twenty six years. My responsibilities require me to oversee all food service operations on the Old Westbury, Central Islip, and Manhattan campuses, including the extensive food service operations run by NYIT at deSeversky Conference Center on NYIT's Old Westbury campus. I am also responsible for creating and meeting budget expectations, and am acting Executive Chef for deSeversky, for which I developed and expedited new menu programs. I report to NYIT's Chief Financial Officer and Treasurer, Leonard Aubrey.

2. I make this Affidavit in opposition to Mr. Anthony Baffo's discrimination complaint against NYIT. I have personal knowledge of the facts stated herein, and each document attached as an Exhibit to this Affidavit is a true copy of the original.

3. Anthony Baffo joined NYIT on September 25, 2006, with the title of General Manager, deSeversky Conference Center ("deSeversky Center"). His appointment letter dated August 28, 2006, is attached as *Exhibit A*.

4. Anthony reported directly to me, and his principal duties and responsibilities were to oversee all operations of deSeversky Center, including food service, events, scheduling, staffing, and all related aspects of deSeversky's day-to-day management.

5. deSeversky Center is a Georgian Mansion owned and operated by NYIT on its Old Westbury campus, and has a combined full-time and part-time staff of over fifty employees. It is a premier Long Island venue for high-end social and educational events, including fine dining and special events, as well as business and education conferences.

6. Anthony's principal charge, as General Manager of deSeversky Center, was to lead NYIT's efforts, under my guidance and supervision, to position deSeversky as a premier Long Island destination for special and social events, including weddings, bar mitzvahs, birthday parties, and charitable fundraising events – in addition to acting as NYIT's flagship venue for educational meetings, conferences, and related mission-related events on behalf of NYIT's diverse schools and programs.

7. For the past two years, Anthony Baffo's performance as deSeversky's General Manager was unsatisfactory. In fiscal 2008, I gave Anthony control of the deSeversky Center budget, and the Center suffered a $600,000 loss in that year. In fiscal 2009, I took back budget control from Anthony, and managed the operation to a $650,000 profit.

8. Anthony's progression from a satisfactory employee, early in his tenure at NYIT, to an employee whose job performance had become increasingly less satisfactory over time, is demonstrated by his formal job evaluations over the past two years, which are attached as *Exhibit B*.

9. Over the past few months, I had several performance-related meetings with Anthony to discuss the shortfalls and performance deficiencies in his work. I repeatedly offered him support and assistance, with a view to helping him succeed in the position. Those efforts were not successful.

10. In August 2009, I began developing a plan to reorganize and eliminate the General Manager's position, by creating two new positions and repositioning my catering sales manager. I had several conversations with Eric Redlich, sales manager at deSeversky Center, about his role within this reorganization. In early September 2009, the appropriate paperwork was processed in order to authorize recruitment for these new positions, and the positions were later listed on Monster.com. My supervisor, and NYIT's CFO and Treasurer, Len Aubrey, approved the elimination of the position of General Manager by memorandum dated October 16, 2009 – a copy of which memo is attached as *Exhibit C*.

11. During the week of September 21, 2009, Anthony told me he was diagnosed with a disease that his sister had. I didn't recognize the name of the disease – but it was <u>not</u> HIV or AIDS. He further explained that it wasn't at all as serious as his sister's disease and that, as far as he was concerned, it would not affect his work. The following week, the week of September 28, 2009, Anthony mentioned he was still not feeling well, that his doctor wanted to run more tests, and that he would need to take some time off work to do so. I told him to take whatever

time he needed. At no time did Anthony claim that he was "disabled" or request any formal work accommodation from NYIT.

12. On October 2, 2009, Anthony sent me an email stating he had to go to the doctor. That email is attached as *Exhibit D*. Later on October 2, 2009, Anthony sent me another email, to which I responded, and those two emails are attached as *Exhibit E*. Anthony left for vacation on October 3rd. At no time on October 2nd did Anthony tell me that he was being tested for the HIV virus, or that he feared he might be HIV-positive. As I explain below, I only became aware of Anthony's HIV status on October 23, 2009 – the very day that the NYIT Director of Human Resources, Carol Jablonsky, and I had pre-arranged to meet with Anthony and inform him of the elimination of the General Manager position.

13. As demonstrated by the mid-October 2009 emails attached as *Exhibit F*, I had pre-arranged with NYIT's new Director of Human Resources, Carol Jablonsky, to meet with Anthony and Carol at 10:00 a.m. on October 23rd, at deSeversky Center, to inform Anthony of the elimination of the General Manager position and to have Carol explain to him the benefits to which he would entitled, in that connection.

14. Early on the morning of Friday, October 23, 2009, Anthony arrived at work and immediately asked to speak to me, at which time Anthony told me that he had been diagnosed with the HIV virus, and that he was going to start treatment soon. That was the first, and only, time Anthony ever mentioned HIV to me, in any context.

15. When, about 8:30 a.m. on October 23rd, Anthony told me that he had learned that he had the HIV virus, Carol Jablonsky and I decided that it would be inhumane to go forward with the 10:00 a.m. meeting scheduled for later that morning, and that we should reschedule that meeting until Monday, October 26th. After we learned of Anthony's HIV status on October 23rd,

5

Carol and I did recommend that the severance offered to Anthony be increased, including offering him extended medical benefits. We recommended that action for humanitarian reasons — because, even though NYIT acted lawfully in eliminating the General Manager position at deSeversky, NYIT genuinely empathized with Anthony's medical plight and wanted to assist him, as far as its limited budget resources would permit.

16. In conclusion, the elimination of Anthony Baffo's position as General Manager was planned well in advance of any knowledge by me, or — to my knowledge — by anyone else at NYIT; that Anthony had the HIV virus, and had nothing to do with that fact. Rather, the planned reduction in force predated any knowledge by anyone at NYIT about Anthony's HIV status, and was motivated by NYIT's need to streamline the management structure, and improve the cost-effectiveness of, deSeversky Center.

_____
Robert J. Rizzuto

Subscribed and sworn to before me this

__11__ day of November, 2009.

_____
Notary Public

ROSEMARY M. CRESCENZO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CR4828679
Qualified in Nassau County
Commission Expires May 31, 20 11

DO7281