UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------

ANTHONY BAFFO,

      Plaintiff,

  -against-         Index No. 10-CV-01245 (LDW)(ETB)

NEW YORK INSTITUTE OF
TECHNOLOGY; ROBERT RIZZUTO, in
his official and individual capacities; and
LEONARD AUBREY, in his official and
individual capacities,

      Defendants.

---------------------------------------------

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

                     Douglas P. Catalano
                     Neil G. Sparber
                     FULBRIGHT & JAWORSKI L.L.P.
                     666 Fifth Avenue
                     New York, New York 10103
                     Telephone: (212) 318-3000
                     dcatalano@fulbright.com
                     nsparber@fulbright.com

                     Attorneys for Defendants

90559533.3

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

POINT I.  SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION ........................................................................................ 2

    A.  No Temporal Proximity Exists ............................................................................ 2

    B.  The Alleged Discriminatory Statements Do Not Create an Inference of Discrimination ..................................................................................................... 3

    C.  The Record Confirms that the Decision to Terminate Plaintiff Was Made Prior to October 2009 .......................................................................................... 5

POINT II.  PLAINTIFF CANNOT REBUT DEFENDANTS' LEGITIMATE NON-DISCRIMINATORY REASON FOR HIS TERMINATION .............................. 7

POINT III.  THE NEW YORK CITY HUMAN RIGHTS LAW IS INAPPLICABLE ........... 9

POINT IV.  RIZZUTO AND AUBREY ARE NOT PERSONALLY LIABLE ....................... 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**CASES** Page(s)

Antunes v. Putnam/Northern Westchester Bd. of Coop. Educ. Servs.,
  2011 U.S. Dist. LEXIS 54111 (S.D.N.Y. May 18, 2011) ................................................. 4

Campbell v. Alliance Nat'l Inc.,
  107 F. Supp. 2d 234 (S.D.N.Y. 2000) ............................................................................. 4

Danzer v. Norden Sys.,
  151 F.3d 50 (2d Cir. 1998) .............................................................................................. 4

Drummond v. IPC Int'l, Inc.,
  400 F. Supp. 2d 521 (E.D.N.Y. 2005) ............................................................................. 9

Flores v. Buy Buy Baby, Inc.,
  118 F.Supp.2d 425 (S.D.N.Y. 2000) ............................................................................... 3

Gaffney v. Dep't of Info. Tech. & Telecommunications,
  536 F. Supp. 2d 445 ........................................................................................................ 8

Hayles v. Advanced Travel Management Corporation,
  2002 U.S. Dist. LEXIS 7192 (S.D.N.Y. 2003) ............................................................... 4

Hoffman v. Parade Publis.,
  15 N.Y.3d 285 (2010) ..................................................................................................... 9

Kolivas v. Credit Agricole,
  1996 U.S. Dist. LEXIS 17478 (S.D.N.Y. Nov. 26, 1996) ........................................... 6, 7

Martin v. Citibank, N.A.,
  762 F.2d 212 (2d Cir. 1985) ............................................................................................ 7

Ortiz v. Heir AM. Trading, LLC,
  2011 NY Slip Op 31414(U) (S. Ct. New York Co. May 24, 2011) ................................ 9

Primmer v. CBS Studios, Inc.,
  667 F. Supp. 2d 248. (S.D.N.Y. 2009) ............................................................................ 3

Williams v. City of New York,
  2005 U.S. Dist. LEXIS 6083 (S.D.N.Y. Apr. 12, 2005) ................................................. 4

Woroski v. Nashua Corp.,
  31 F.3d 105 (2d Cir. 1994) .............................................................................................. 4

- 2 -

Yerry v. Pizza Hut of Southeast Kansas,
    186 F. Supp. 2d 178 (N.D.N.Y. 2002) .................................................................................9

## PRELIMINARY STATEMENT

Plaintiff has either ignored, or glossed over, a number of critical facts and issues raised by defendants. First, it is undeniable that plaintiff received unsatisfactory evaluations of his job performance for two years prior to plaintiff having been diagnosed as HIV positive. Second, plaintiff glosses over the unrebutted deposition testimony of Robert Rizzuto, Leonard Aubrey, and Eric Redlich that the decision to eliminate the general manager position was made in August and September 2009. Third, while contending that there are no documents to suggest the decision to eliminate the general manager position occurred in August and September 2009, plaintiff also glosses over (i) calendar entries showing meetings between Robert Rizzuto and Leonard in August 2009 referring to a "slight re-organization of de Seversky" (Exhibit 6); (ii) the memorandum from Robert Rizzuto to Leonard Aubrey, dated September 1, 2009, which attaches the Recruitment Authorization for the new catering sales position, the Recruitment Authorizations for the positions of Dining Room Caption and Catering Sales Associate, both of which are dated September 3, 2009, together with a memorandum, dated September 3, 2009, from Robert Rizzuto to Leonard Aubrey, enclosing the Recruitment Authorizations (Exhibits 9 and 10); (iii) the approval on September 15, 2009 by Edward Guiliano, President of NYIT, of the Request Authorization for the Dining Room Captain (Exhibit 12); (iv) an email, dated September 25, 2009, from Maureen Gaughran to Anthony Baffo, indicating that the Request Authorization for the Catering Sales Associate had been approved (Exhibit 13); and (v) the postings on Monster.com for the positions of Dining Room Captain and Sales Catering Associate at the de Seversky Center which were posted on or about September 22, 2009 and September 29, 2009, respectively. (Exhibits 14 and 15). There is no reasonable explanation of these documents other than they reflect the reorganization of the Seversky Center, and the elimination of the general manager position, was begin in August/September 2009.

90559533.3

Fourth, plaintiff did not even attempt to address why NYIT raised its offer of severance from $6,444 and five months of medical coverage to $20,000 and twelve months of medical coverage on October 23, 2009, the day that plaintiff disclosed to NYIT that he was diagnosed as being HIV positive. Finally, plaintiff has now mysteriously recalled, for the first time, an alleged remark by Mr. Rizzuto in or about July 2008, concerning an employee who had by-pass surgery and purportedly went out on disability leave. (See Exhibit 1 to the Declaration of Matthew Gorman, at ¶¶ 35-36; Pl. Response to Defendants' Rule 56.1 Statement at ¶¶ 145-149). Plaintiff did not include the alleged remark in his charge of discrimination filed with the New York State Division of Human Rights, (Exhibit 29) in the six page single spaced letter from his counsel to NYIT, (Exhibit 30) or in the complaint (Exhibit 28). Moreover, plaintiff did not testify to the alleged remark during his deposition and, most significant, plaintiff's counsel did not question Mr. Rizzuto at his deposition about the remark. It is respectful submitted that under such circumstances, plaintiff's assertion regarding the remark is not credible.

**POINT I.** **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION**

### A. No Temporal Proximity Exists.

Plaintiff's entire argument is premised on his ignoring the undisputed evidence that the decision to eliminate plaintiff's position occurred prior to October 2009. The preparation of a memorandum and an organizational chart for human resource purposes after October 16, 2009 does not, as suggested by plaintiff at page 12 of his memorandum, contradict the testimony by Mr. Rizzuto and Mr. Aubrey that the decision to eliminate the general manager position was made in August/September 2009, prior to plaintiff having informed NYIT that he tested HIV positive.

The cases cited by plaintiff at page 12 of his memorandum are inapposite since the evidence establishes that the decision to eliminate plaintiff was made <u>before</u> plaintiff informed NYIT that he tested HIV positive and thus no "temporal proximity" exists. Thus, in <u>Primmer v. CBS Studios, Inc.</u>, 667 F. Supp. 2d 248. (S.D.N.Y. 2009), there was significant evidence, in addition to temporal proximity, to support an inference of discrimination including that in the meeting during which plaintiff was terminated, her supervisor asked plaintiff about her aneurysm (the alleged perceived disability), and stated that "they needed 'someone at the top of their game' and someone 'who could handle the pressure,'" there was lack of any poor performance evaluations during plaintiff's employment history, and plaintiff had received a 6% salary increase. <u>Id</u>. at 259-260. In <u>Flores v. Buy Buy Baby, Inc.</u>, 118 F.Supp.2d 425, 430-431 (S.D.N.Y. 2000), the plaintiff was purportedly terminated for poor performance one month after informing her employer she was pregnant but she said just successfully completed her performance evaluation, and there was no evidence of any performance deficiencies. Unlike <u>Primmer</u> and <u>Flores</u>, in which there was additional evidence considered besides merely temporal proximity, including lack of evidence of poor performance, in this case plaintiff's poor performance is well-documented and plaintiff has failed to present any additional evidence from which an inference of discrimination can arise.

### B. The Alleged Discriminatory Statements Do Not Create an Inference of Discrimination.

As set forth above, plaintiff now recalls, for the first time,[1] an alleged remark by Mr. Rizzuto in or about July 2008, that when an employee went out on disability leave that he wished

---

[1] Plaintiff did not mention the remark in his charge of discrimination filed with the New York State Division of Human Rights, in the six page single spaced letter from his counsel to NYIT, or in the complaint. (Exhibits 28, 29, and 30). Moreover, plaintiff did not testify to the alleged remarks during his deposition and, most significant, plaintiff's counsel did not question Mr. Rizzuto at his deposition about the remarks.

he had fired him because he could not thereafter replace him and that he would never let such a situation occur again." (See Exhibit 1 to the Declaration of Matthew Gorman, at ¶¶ 35-36; Pl. Counter Rule 56.1 Statement ¶¶ 145-149).[2] Even if the Court were to consider the alleged statement, no inference of discrimination arises since stray remarks unrelated to the decision process are rarely given great weight, especially when they were made temporally remote from the date of decision. See Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000); see also Danzer v. Norden Sys., 151 F.3d 50, 56 (2d Cir. 1998) (stray remark by employer without more does not constitute sufficient evidence to make out case of employment discrimination); Woroski v. Nashua Corp., 31 F.3d 105, 108-110 & n.2 (2d Cir. 1994) (indicating that stray remarks - even by a decision maker - cannot alone prove workplace discrimination); Antunes v. Putnam/Northern Westchester Bd. of Coop. Educ. Servs., 2011 U.S. Dist. LEXIS 54111 (S.D.N.Y. May 18, 2011) (stray remark by decision maker was not evidence of discrimination because there was no connection between the comments and the decision not to promote the plaintiff); Williams v. City of New York, 2005 U.S. Dist. LEXIS 6083 (S.D.N.Y. Apr. 12, 2005) (stray comment by decision maker disregarded because it was unrelated to plaintiff's evaluation or termination).

Moreover, Rizzuto allegedly made the stray remark in July 2008, over 15 months before he was terminated. See Hayles v. Advanced Travel Management Corporation, 2002 U.S. Dist. LEXIS 7192 at *8-9, 62 (S.D.N.Y. 2003) (alleged racially discriminatory comments by employer's president, to whom the plaintiff reported, including a remark in which the president allegedly called the plaintiff a "stupid black bitch" three months prior to plaintiff's alleged

---

[2] It should be noted that Mr. Rizzuto himself had undergone brain surgery in or about July 2008, one month prior to the alleged remark, and was absent from work to recover (Exhibit 31 at 211). It is not plausible that Mr. Rizzuto would have made a discriminatory statement concerning another employee who had similarly undergone major surgery.

constructive discharge were "stray remarks" not temporally linked to the alleged adverse employment action and, as a result, did not lead to an inference of discrimination.)

The alleged statements are "stray remarks" allegedly made over one year before plaintiff was terminated and not related in any manner to the decision to terminate his employment. Thus, Mr. Rizzuto's alleged statements, even if they could be considered discriminatory, do not provide any evidence of a discriminatory motive in connection with plaintiff's termination.

### C. The Record Confirms that the Decision to Terminate Plaintiff Was Made Prior to October 2009.

Unable to meet his burden to present affirmative and specific evidence to rebut defendant's evidence that the decision to eliminate plaintiff's position occurred prior to October 2009, plaintiff requests the Court to disregard the unambiguous and consistent sworn testimony of Messrs. Rizzuto, Aubrey and Redlich that they had multiple conversations concerning the decision to eliminate plaintiff's position in August/September 2009 for the sole reason that they could not recall a <u>specific</u> date on which the decision was made and that there are allegedly no documents to support their testimony. (Pl. Mem. at 13).

There are numerous documents, however, which support the unrebutted testimony establishes that the decision to eliminate plaintiff's position was made prior to October 2009 – the exact date is immaterial. Plaintiff is relegated to suggesting unsupported meanings behind the documents which demonstrate the decision to reorganize was made prior to October 2009. (Pl. Mem. at 13-15). The recruitment authorizations and the accompanying memoranda were submitted to Aubrey on September 1, 2009. The job postings were posted on Monster.com on September 22 and 29, 2009 and as Mr. Rizzuto testified, were directly related to the planned reorganization, which included the elimination of plaintiff's position. Nevertheless, plaintiff contends that these documents do not relate to the decision to reorganize the de Seversky Center

because they reference the general manager's position which, plaintiff speculates, would not have been included if Mr. Rizzuto had decided to eliminate the position. (Pl. Mem. 13-14). This is pure conjecture. What other explanation would there be of the documents referring to a "slight reorganization of de Seversky. Messrs. Rizzuto and Aubrey testified that these actions were part of the reorganization plan and that the documents reference the general manager's position is entirely consistent with the fact that Mr. Rizzuto's had not yet informed plaintiff of the decision.

Moreover, the September 1, 2009 memorandum from Mr. Rizzuto to Mr. Aubrey, which attached the Recruitment Authorization for the new catering sales position confirms that the new sales position "is part of the reorganization of the management positions which will give Eric [Redlich] more support in the area of sales as he gets repositioned," that "[m]y goal is to bring this person in as soon as possible and to make the other change we spoke of effective October 1, 2009" and that "[t]he request for this position is part of a reorganization of the management staff." The reference to the reorganization plan, the "other change we spoke about" and "reorganization of the management staff" is a clear reference to the elimination of the general manager's position and the assumption of additional responsibilities by Mr. Redlich as a result. It is immaterial that the memorandum does not expressly state that the general manager's position would be eliminated (Pl. Mem. at 14) inasmuch as the memorandum references prior discussions between Mr. Rizzuto and Mr. Aubrey during which they had decided to eliminate the position.

Where the decision to terminate an employee is made prior to the employer learning of the alleged disability, there can be no inference of discrimination. <u>Kolivas v. Credit Agricole</u>, 1996 U.S. Dist. LEXIS 17478 (S.D.N.Y. Nov. 26, 1996), <u>aff'd</u>, 1997 U.S. App. LEXIS 27163 (2d Cir. Oct. 7, 1997). In <u>Kolivas</u>, discussed at length in defendants' main memorandum at

pages 13-15, the Court found it dispositive that prior to learning of plaintiff's depression, plaintiff's supervisor had already decided to fire plaintiff and communicated that desire to human resources on February 10, 1995.  Id. at *10-11.  Moreover, the president had "already begun to consider" terminating plaintiff based on his conversation earlier in that week.  Id.  Notably, the Court noted that "it was irrelevant that [the president] did not officially approve [the supervisor's] decision to terminate plaintiff" until after plaintiff disclosed his depression because the supervisor already determined that she wanted to terminate plaintiff and she "merely had to seek approval."  Id. at *14 (emphasis added).  It is important to note that, contrary to plaintiff's contention, there was no contemporaneous documentation that the decision to terminate plaintiff was made on February 10, 1995.  The only evidence of the date of the decision was testimony of oral communications.

As in Kolivas, there is evidence demonstrating that Mr. Rizzuto communicated his desire to eliminate plaintiff's position to Mr, Aubrey prior to learning of HIV's status and they began the process to implement that decision.  Thus, Mr. Aubrey's formal approval from a budgetary perspective of the elimination of the general manager position in his capacity of NYIT's Chief Financial Officer in the October 16, 2009 memorandum is immaterial inasmuch as the decision had already been made in August and September 2009 that plaintiff would be terminated.

### POINT II.  PLAINTIFF CANNOT REBUT DEFENDANTS' LEGITIMATE NON-DISCRIMINATORY REASON FOR HIS TERMINATION

A plaintiff may not rely solely upon a request that a fact finder disbelieve testimony about when an employer made a decision to terminate an employee; rather the plaintiff must offer the fact finder affirmative evidence to support a claim that a decision maker had knowledge of the disability when the decision was made, Kolivas, 1996 U.S. Dist. LEXIS at *13.  See also Martin v. Citibank, N.A., 762 F.2d 212, 218 (2d Cir. 1985) (reversing finding of racial

discrimination based on lack of affirmative evidence and notes that to hold otherwise would be to permit the jury to reach a verdict based on "their surmise and conjecture.")

Plaintiff's claims should be dismissed because he has failed to establish by use of affirmative evidence that defendants' articulated legitimate non-discriminatory reason for his termination, poor performance, the reorganization at the de Seversky Center and the elimination of plaintiff's his position to get a "more bang for [the] buck," (Exhibit 3 at 168-169) was a pretext for actual discrimination. While plaintiff points to allegedly contradictory testimony concerning the reasons for the elimination of plaintiff's position, whether it was based on financial or performance considerations, plaintiff has presented no evidence to support a finding that discrimination based on his HIV status was the real reason for the termination. Gaffney v. Dep't of Info. Tech. & Telecommunications, 536 F. Supp. 2d 445, cited by plaintiff at pages 18 and 20 of his opposition memorandum, does not support his position. In Gaffney, the plaintiff provided evidence that after she was terminated for budgetary reasons, the defendant hired additional employees into her department at higher salaries, in one case at over $25,000 more than plaintiff had made, defendant gave promotions and raises to others increasing the defendant's overall salary expenditure, and that a white employee who had been proposed to be laid off made $20,000 more than plaintiff yet was not terminated. Id. at 457-458. The opposite is true herein. While plaintiff points to a $5,000 raise received by Mr. Redlich, the total amount for Mr. Redlich's raise and the salaries to be paid to the new employees was less than plaintiff's compensation, of appropriately $104,000 in the last fiscal year of plaintiff's employment. (Exhibit 32 at 87-88).

Thus, plaintiff has failed to carry his burden to offer proof that defendants' legitimate non-discriminatory reason for his termination was false and he has offered no proof that the

actual reason was based on his HIV positive status. As a result, defendants are entitled to summary judgment dismissing plaintiff's claims of discrimination.

### POINT III.   THE NEW YORK CITY HUMAN RIGHTS LAW IS INAPPLICABLE

In Ortiz v. Heir AM. Trading, LLC, 2011 NY Slip Op 31414(U) (S. Ct. New York Co. May 24, 2011), the Court held that a New York resident plaintiff, whose employer had its headquarters in New York City, could not maintain a claim of employment discrimination under the New York City Human Rights Law because the plaintiff was employed in New Jersey and, as a result, the impact of the alleged discriminatory conduct occurred outside New York City. Id. at *3-4. The Ortiz court expressly rejected plaintiff's arguments that because he was New York City resident, the New York City Human Rights Laws was applicable. 2011 NY Slip Op 31414(U), *4-5. Plaintiff's contention that Ortiz is not good law in light of the New York Court of Appeals decision in Hoffman v. Parade Publis., 15 N.Y.3d 285, 289 (2010), is incorrect since Ortiz was decided after Hoffman, which involved a non-New York resident, and the court in Ortiz expressly cited Hoffman in its opinion. Since all of the alleged discriminatory acts complained of occurred in Old Westbury, New York, outside of New York City, plaintiff's claim for discrimination based on disability under the New York City Human Rights Law should be dismissed.

### POINT IV.   RIZZUTO AND AUBREY ARE NOT PERSONALLY LIABLE

Since plaintiff has failed to raise successfully a question of fact as to the underlying claim of discrimination by the NYIT, there can be no finding that Mr. Aubrey and Mr. Rizzuto aided and abetted the alleged discrimination of NYIT. See Drummond v. IPC Int'l, Inc., 400 F. Supp. 2d 521, 536 (E.D.N.Y. 2005) (applying New York law, granting summary judgment in favor of individual defendant where plaintiff failed to establish the employer's liability); Yerry v. Pizza Hut of Southeast Kansas, 186 F. Supp. 2d 178, 187 (N.D.N.Y. 2002)

## CONCLUSION

For the foregoing reasons, defendants respectfully submit that defendants' motion for summary judgment be granted and the complaint be dismissed in its entirety.

Dated: New York, New York
October 11, 2011

                                      FULBRIGHT & JAWORSKI L.L.P.

                                      By: /s/ Neil M. Sparber
                                      Douglas P. Catalano
                                      Neil G. Sparber
                                      666 Fifth Avenue
                                      New York, New York 10103
                                      (212) 318-3000
                                      dcatalano@fulbright.com
                                      nsparber@fulbright.com
                                      Attorneys for Defendants