UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------

| | |
|---|---|
| ANTHONY BAFFO, | § <br> § |
| Plaintiff, | § <br> § |
| -against- | §    Index No. 10-CV-01245 (LDW)(ETB) <br> § |
| NEW YORK INSTITUTE OF TECHNOLOGY; ROBERT RIZZUTO, in his official and individual capacities; and LEONARD AUBREY, in his official and individual capacities, | § <br> § <br> § <br> § <br> § <br> § |
| Defendants. | § |

------------------------------------------------

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE FOR JURY INSTRUCTION ON DESTROYED EVIDENCE

Douglas P. Catalano
Neil G. Sparber
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 318-3000
dcatalano@fulbright.com
nsparber@fulbright.com

Attorneys for Defendants

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT FACTS .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 9

    POINT I.    THERE IS NO EVIDENCE ANY DOCUMENT WAS DESTROYED ............................................................................... 10

    POINT II.    EVEN IF AN ALLEGED AUGUST 2009 MEMORANDUM DID EXIST, THE EVIDENCE SUGGESTS THAT IT WOULD BE FAVORABLE TO DEFENDANTS AND NOT TO PLAINTIFF'S POSITION ..................................................................................... 12

CONCLUSION .................................................................................................................. 17

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Farella v. City of New York,
  Nos. 05 Civ. 5711 & 05 Civ. 8264, 2007 WL 193867 (S.D.N.Y. Jan. 25, 2007) ..............10

Giarrizzo v. Holder,
  07-CV-0801 MAD/GHL, 2012 WL 716189 (N.D.N.Y. Mar. 5, 2012)........................12, 13

Kermode v. University of Mississippi Medical Center
  2011 WL 2619096 (S.D. Miss. July 7, 2011) ....................................................................10

Kronisch v. United States,
  150 F.3d 112 (2d Cir. 1998)........................................................................................14, 15

Orbit One Communications, Inc. v. Numerex Corp.,
  271 F.R.D. 429 (S.D.N.Y. 2010) ................................................................................10, 12

Pegoraro v. Marrero,
  2011 WL 5223652 (S.D.N.Y. 2011)..................................................................................13

Residential Funding Corp. v. DeGeorge Fin. Corp.,
  306 F.3d 99 (2d Cir. 2002)................................................................................................10

Scalera v. Electrograph Systems, Inc.,
  262 F.R.D. 162 (E.D.N.Y. 2009) ..................................................................9, 10, 13, 14

Schwarz v. FedEx Kinko's Office,
  08 CIV. 6486 (THK), 2009 WL 3459217 (S.D.N.Y. Oct. 27, 2009) ................................12

Sovulj v. United States,
  98 CV 5550, 2005 WL 2290495 (E.D.N.Y. Sept. 20, 2005).............................................13

Toussie v. County of Suffolk,
  CV 01-6716, 2007 WL 4565160 (E.D.N.Y. Dec. 21, 2007) .............................................14

Treppel v. Biovail Corp.,
  249 F.R.D. 111 (S.D.N.Y. 2008) ..................................................................................9, 13

Zimmerman v. Poly Prep Country Day School
  2011 WL 1429221 (E.D.N.Y April 13, 2011) ..................................................................10

## PRELIMINARY STATEMENT

Plaintiff has misrepresented to the Court the documentary evidence in this case in an attempt to gain an unwarranted adverse jury instruction. There is simply no evidence that any document was destroyed. Plaintiff's "evidence" is a reference to the deposition testimony of Robert Rizzuto, NYIT's Director of Dining Services and plaintiff's former supervisor, that he believed he had written a memorandum concerning the elimination of plaintiff's position to Leonard Aubrey, Vice President of Financial Affairs for NYIT, in August 2009 which he was unable to locate after a search of his records. Remarkably, however, plaintiff's counsel failed to present to Mr. Rizzuto during his deposition a memorandum dated September 1, 2009, from Mr. Rizzuto to Mr. Aubrey which concerned the exact same subject matter -- elimination of plaintiff's position and the reorganization of the de Seversky Center (the "September 1, 2009 memorandum"). As set forth in Mr. Rizzuto's affidavit, sworn to May 30, 2012, Mr. Rizzuto knows the September 1, 2009 memorandum he sent to Mr. Aubrey to be the memorandum about which he testified at his deposition. Had plaintiff's counsel shown Mr. Rizzuto the September 1, 2009 memorandum, Mr. Rizzuto would have testified that it was indeed the memorandum he mistakenly believed he wrote in August 2009. Instead, plaintiff's counsel withheld the September 1, 2009 memorandum, produced by NYIT in September 2010 over six months prior to Mr. Rizzuto's deposition, from the over thirty exhibits shown to Mr. Rizzuto during the two days of his deposition.

Moreover, plaintiff's counsel never showed the September 1, 2009 memorandum to Mr. Aubrey, the recipient of the memorandum, during the two days of his deposition. Mr. Aubrey was questioned about documents concerning the proposed reorganization in August 2009, but he was not shown the September 1, 2009 memorandum. Now, nearly a year after discovery was

90755106.1

completed and two weeks before trial, plaintiff is attempting to manufacture an allegation of destruction of evidence which does not exist.

In addition, even if there were to have been an August 2009 memorandum, the significance of the alleged memorandum is grossly overstated by counsel who mistakenly states (i) that there is no documentary evidence that a decision was made in August 2009; and (ii) that because whether the decision to eliminate plaintiff's position was made prior to October 2009 is the main issue in this case, an alleged August 2009 memorandum is critical. Contrary to plaintiff's contention, there is ample documentary evidence that defendants decided to eliminate plaintiff's position as early as August 2009 and September 2009, well before plaintiff himself knew he was HIV positive and before plaintiff himself claims he told the defendants he was HIV positive on October 2, 2009. This evidence includes outlook calendar entries showing meetings between Robert Rizzuto and Leonard in August 2009 referring to a "slight re-organization of de Seversky." Moreover, the existence of an alleged August 2009 memorandum is not significant to the issue of whether defendants decided to eliminate plaintiff's position prior to October 2009 because of the substantial documentary evidence from September 2009, which plaintiff has chosen not to bring to the Court's attention on the motion, including the September 1, 2009 memorandum from Mr. Rizzuto and Mr. Aubrey as well as other documents, such as recruitment authorizations and related approvals for the positions being filled with the savings from the elimination of Mr. Baffo's position, and which demonstrate the reorganization of the de Seversky Center was being implemented and planned prior to October 2009.

In sum, plaintiff's speculation that an August 2009 memorandum existed and was destroyed is not supported by any evidence and is severely undercut by plaintiff's counsel failure to ask Mr. Rizzuto about the September 1, 2009 memorandum at either day of his deposition. In

fact, as Mr. Rizzuto attests to, the September 1, 2009 memorandum is the document he was referring to in his deposition. There is no evidence of destruction. Moreover, even if an alleged August 2009 memorandum had existed, plaintiff merely speculates that it would have been favorable to his claims where, in fact, all other evidence, including the testimony of witnesses concerning discussions in August 2009 regarding the elimination of plaintiff's position and other documentary evidence from August 2009 and September 2009, indicates that an August 2009 memorandum would have supported defendants' position that the decision to eliminate plaintiff's position was made prior to October 2009.

Plaintiff's entire motion is premised on pure conjecture and appears to be an improper attempt to gain an unwarranted advantage at trial. As a result, plaintiff's motion for a jury instruction on destroyed evidence should be denied.

## RELEVANT FACTS[1]

Plaintiff alleges that he was terminated from his position as general manager at NYIT's de Seversky Center on October 26, 2009 after he allegedly disclosed to his supervisor, Robert Rizzuto, that he was HIV positive on October 2, 2009.[2] It is undisputed that plaintiff received unsatisfactory evaluations of his job performance for two years prior to plaintiff having been diagnosed as HIV positive. Moreover, as set forth below, the unrebutted testimony of defendants' witnesses and documentary evidence demonstrate that defendants decided in August

---

[1] The Court is respectfully referred to defendant's memorandum of law in support of its motion for summary judgment and Rule 56.1 statement for a full recitation of the facts.

[2] Defendants dispute that plaintiff informed them that he was HIV positive on October 2, 2009 and contend that plaintiff informed them on October 23, 2009 that he was HIV positive which is borne out by the testimony and documentary evidence in this case. However, the exact date on which plaintiff informed defendants of his HIV status is not relevant for purposes of this motion because the decision to eliminate plaintiff's position was made before even plaintiff alleges he informed defendants of his HIV status.

and September 2009, to eliminate plaintiff's position as part of a planned organization, which was prior to plaintiff's disclosure of his HIV status to defendants.

By early August 2009, Mr. Rizzuto decided that the general manager position should be eliminated and that the de Seversky Center should be reorganized. (Exhibit 1 at 164-170, 409-411). It was at that time that Mr. Rizzuto began developing his plan for the reorganization by (i) eliminating the general manager's position and creating two new positions with the savings from the elimination of the position; (ii) his own assumption of the bulk of the responsibilities of general manager; and (iii) delegating some of the responsibilities of the general manager to the catering sales manager, Eric Redlich. (Exhibit 1 at 174-177). Mr. Rizzuto spoke with defendant Leonard Aubrey, the Vice President of Financial Affairs and Chief Financial Officer of NYIT, about the proposed reorganization throughout August and September 2009. ( Exhibit 1 at 172-174; Exhibit 2 at 128, 207-208).

During the summer of 2009, Mr. Aubrey and Mr. Rizzuto had periodic discussions concerning the financial performance of the de Seversky Center as well as their concerns over plaintiff's performance, his inability to show he was a strong manager, and the lack of improvement of his performance over time. (Exhibit 2 at 67-69, 115-116, 127-128, 154; Exhibit 1 at 172-174). Mr. Rizzuto specifically discussed the elimination of the general manager position with Mr. Aubrey as early as August 2009. (Exhibit 2 at 173; Exhibit 2 at 70). These August 2009 discussions are documented through outlook calendar entries showing meetings between Mr. Rizzuto and Mr. Aubrey concerning a "slight reorganization of de Seversky." (Exhibit 3). During the discussions between Mr. Rizzuto and Mr. Aubrey in August 2009, both Mr. Rizzuto and Mr. Aubrey determined that the general manager's position should be eliminated and that the management of the de Seversky Center should be instituted in a cost-

effective manner. (Exhibit 1 at 206-208; Exhibit 2 at 69-70, 128, 207-208; Exhibit 4 at 68). The decision to eliminate the general manager position and terminate plaintiff was both performance and financially based. (Exhibit 2 at 71, 115-116, 127-128).

Mr. Rizzuto also discussed his plan to reorganize the de Seversky Center, and more specifically, his plan to eliminate the general manager position held by plaintiff, with Mr. Redlich beginning as early as August 2009. (Exhibit 1 at 164-168, Exhibit 5 at 73-75, 77-85, 104-105). Mr. Rizzuto had also voiced his dissatisfaction with plaintiff's performance as general manager on a weekly basis to Mr. Redlich. (Exhibit 5 at 67, 74-75). Mr. Rizzuto discussed with Mr. Redlich the increased role Mr. Redlich would take on once the reorganization and elimination of the general manager position was implemented. (Exhibit 1 at 167-170; 309-310). During August 2009, Mr. Rizzuto also discussed his decision to reorganize the de Seversky Center and eliminate the general manager position with Pilar Visconti, NYIT's food service director, to get her input. (Exhibit 1 at 164-165). All of these discussions remain unrebutted by plaintiff.

On or about September 1, 2009, Mr. Rizzuto prepared a memorandum for Mr. Aubrey in connection with the planned reorganization and the recruitment authorizations for the two new positions, dining room captain and catering sales associate. (Exhibit 1 at 182-183, 195-198; Exhibit 5 at 79; Exhibits 6 and 7). In fact, on September 3, 2009, Mr. Rizzuto sent to Mr. Aubrey a cover letter, dated September 1, 2009, in connection with the recruitment authorization for the new sales position in which he noted "as previously discussed, this is part of the reorganization of the management positions which will give Eric [Redlich] more support in the area of sales as he gets repositioned." (Exhibit 8). The memorandum also stated that Mr. Rizzuto's goal was to hire for the sales position as soon as possible "and <u>to make the other</u>

change we spoke of effective October 1, 2009," refers to the elimination of the general manager position. (Exhibit 8) (emphasis added). On September 15, 2009, President Edward Guiliano approved the Request Authorization for the Dining Room Captain (Exhibit 9) and by September 25, 2009, the Request Authorization for the Catering Sales Associate had been approved. (Exhibit 10). These positions were later listed on Monster.com beginning on or about September 22 and 29, 2009, respectively. (Exhibits 11 and 12).[3]

While the exact positions that were created may have changed from the original plan (Exhibit 1 at 176-177; 494-496). Mr. Rizzuto testified that the goal of the reorganization, i.e., the elimination of the general manager position, was to have a more effective operation and greater leadership of the staff, areas in which plaintiff was lacking. (Exhibit 1 at 205-210). Mr. Rizzuto believed he could handle most of the general manger functions since he was essentially performing those functions already, with Mr. Redlich taking on some of the operations functions, and the added need in the dining room would be taken care of through the hiring of the new personnel. (Exhibit 1 at 159-176).

Thus, it is undisputed that the decision to reorganize the de Seversky Center was made by both Mr. Rizzuto and Mr. Aubrey in August 2009, which included the decision to eliminate the general manager position held by plaintiff, and that the implementation of the decision began in September 2009. Plaintiff cannot rebut any of the testimony or documentary evidence set forth above. There were numerous discussions between and among Robert Rizzuto, Leonard Aubrey, Eric Redlich and Pilar Visconti concerning the decision to reorganize the de Seversky Center and eliminate the position of general manager in August/September 2009.

---

[3] These documents demonstrate that the decision to eliminate the general manager position was made prior to September 1, 2009 and that the process to effectuate the decision had begun by September 3, 2009.

During the deposition of Robert Rizzuto in March and April 2011, Mr. Rizzuto testified that he believed that he had written a memorandum in August 2009 to Leonard Aubrey which referenced the elimination of plaintiff's position and/or the reorganization of the de Seversky Center. Mr. Rizzuto testified that after searching his files, he had been unable to locate it and that he had asked Mr. Aubrey if he recalled a memorandum in August 2009. Mr. Aubrey indicated that he did not.

Since Mr. Rizzuto's deposition, Mr. Rizzuto reviewed documents which were produced by NYIT to plaintiff during discovery. (Rizzuto Affidavit ¶4). Mr. Rizzuto specifically reviewed the memorandum dated September 1, 2009 from him to Mr. Aubrey concerning a recruitment authorization for the new catering sales position in which he stated that the sales position "is part of the reorganization of the management positions which will give Eric [Redlich] more support in the area of sales as he gets repositioned," that "[m]y goal is to bring this person in as soon as possible and to make the other change we spoke of effective October 1, 2009" and that "[t]he request for this position is part of a reorganization of the management staff." (emphasis added). (Rizzuto Affidavit ¶4; Exhibit 8).

The September 1, 2009 memorandum was produced to plaintiff's counsel in the ordinary course of discovery on or about September 8, 2010, over six months prior to the date of the first day of his deposition on March 22, 2011. Even though plaintiff's counsel presented over thirty different exhibits to Mr. Rizzuto during his deposition, plaintiff's counsel did not show Mr. Rizzuto a copy of this September 1, 2009 memorandum nor did plaintiff's counsel specifically question Mr. Rizzuto about this memorandum. (Rizzuto Affidavit ¶7).

As set forth in the accompanying affidavit, after having reviewed the September 1, 2009 memorandum, Mr. Rizzuto knows that this is memorandum to which he was referring in his

deposition as mistakenly having been written in August 2009, instead of in the beginning of September 2009. (Rizzuto Affidavit, ¶5). It should be noted that plaintiff's contention is based upon the one day mistake in Mr. Rizzuto's reference. If the September 1, 2009 memorandum was dated August 31, 2009, one day earlier, Mr. Rizzuto's testimony of having written a memorandum in August 2009 would have been accurate. In any event, if plaintiff's counsel had shown Mr. Rizzuto the September 1, 2009 memorandum during either day of his deposition Mr. Rizzuto would have testified that it was, in fact, the document which Mr. Rizzuto had thought he wrote in August 2009. (Rizzuto Affidavit, ¶8). The reference in the September 1, 2009 memorandum to the reorganization plan, the "other change we spoke about" and "reorganization of the management staff" is a clear reference to the elimination of the general manager's position and the assumption of additional responsibilities by Mr. Redlich as a result. It is immaterial that the memorandum does not expressly state that the general manager's position would be eliminated inasmuch as the memorandum references prior discussions between Mr. Rizzuto and Mr. Aubrey during which they had decided to eliminate the position.

Why didn't plaintiff's counsel present this memorandum to Mr. Rizzuto during his deposition when Mr. Rizzuto testified that he thought he had written a memorandum in August 2009 concerning the reorganization? Plaintiff's counsel could have shown Mr. Rizzuto the September 1, 2009 memorandum and asked whether this was indeed the memorandum Mr. Rizzuto believed he created. Plaintiff's counsel did not do so and now bases his application for an adverse instruction on Mr. Rizzuto's belief at his deposition, two years after August 2009, that he may have created a document during that period. The September 1, 2009 memorandum was, in fact, the memorandum Mr. Rizzuto had been referring to in his deposition and there was no destruction of any document.

Similarly, why didn't plaintiff show the September 1, 2009 memorandum to Len Aubrey, the recipient of the memorandum, at his deposition? He also was questioned about documents prepared in August 2009 regarding the reorganization, but he was not asked about the September 1 memorandum. He would also have confirmed that the memorandum referenced discussions he had with Mr. Rizzuto in August 2009.

As set forth above, there is substantial evidence in the record, including the memoranda, recruitment authorizations, and job postings related to the reorganization of the de Seversky Center which undeniably reflect the reorganization of the de Seversky Center and the elimination of the general manager position began in August/September 2009. Thus, even if an August 2009 memorandum had existed, it could not have been critical given the continuum of evidence in the record throughout September 2009 demonstrating that the decision to eliminate plaintiff's position was made prior to October 2009 and prior to plaintiff's disclosure to defendants of his HIV status.

Plaintiff cannot prove that an August 2009 memorandum even existed, was destroyed, or that such a memorandum would have been favorable to his claims. As a result, plaintiff's motion for an adverse inference jury instruction on destruction of evidence should be denied.

## ARGUMENT

A sanction for the alleged spoliation of evidence in the form of "an adverse inference instruction is an extreme sanction and should not be imposed lightly." Scalera v. Electrograph Systems, Inc., 262 F.R.D. 162 (E.D.N.Y. 2009) (citing Treppel v. Biovail Corp., 249 F.R.D. 111, 121(S.D.N.Y. 2008)). In seeking an adverse inference jury instruction, plaintiff has the burden to prove that: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a

reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); Scalera v. Electrograph Systems, Inc., 262 F.R.D. 162 (E.D.N.Y. 2009). Plaintiff has failed to meet his burden.

## POINT I.

### THERE IS NO EVIDENCE ANY DOCUMENT WAS DESTROYED[4]

Before sanctions for the destruction of evidence can be awarded, "it is a necessary, but insufficient, condition that the sought-after evidence actually existed and was destroyed." Orbit One Communications, Inc. v. Numerex Corp., 271 F.R.D. 429, 441 (S.D.N.Y. 2010) (emphasis added) (quoting Farella v. City of New York, Nos. 05 Civ. 5711 & 05 Civ. 8264, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007); Zimmerman v. Poly Prep Country Day School, 2011 WL 1429221 (E.D.N.Y April 13, 2011); Kermode v. University of Mississippi Medical Center, 2011 WL 2619096 (S.D. Miss. July 7, 2011) (denying request for hearing on spoliation noting that plaintiff failed to show that there were emails which were destroyed). Plaintiff cannot even make the threshold showing that an alleged memorandum either existed or was destroyed.

Plaintiff relies entirely on Mr. Rizzuto's testimony at his deposition that he believed that he wrote a memorandum in August 2009 to Leonard Aubrey stating that he wanted to "terminate or revamp the operation concerning Anthony [Baffo]" and Mr. Rizzuto's inability to locate such a memorandum. (See Plaintiff's memorandum at 5-7 and Plaintiff's Exhibit D). As set forth above, and in the Rizzuto Affidavit, since the taking of Mr. Rizzuto's deposition, Mr. Rizzuto

---

[4] As noted by plaintiff in his memorandum of law, NYIT timely instituted a litigation hold in connection with this action following plaintiff's filing a charge of discrimination with the New York State Division of Human Rights in October, 2009. NYIT preserved and collected relevant and responsive documents and electronically stored information from its computer systems and servers and produced thousands of pages of documents to plaintiff during discovery. As set forth in the memorandum, there is no evidence that an August 2009 memorandum even existed or would even have been favorable to plaintiff and thus, for purposes of analyzing plaintiff's burden of proof in this case, we have addressed the last two prongs of plaintiff's burden.

90755106.1   - 10 -

has had the opportunity to review the September 1, 2009 memorandum from him to Mr. Aubrey, which had been produced to plaintiff's counsel but not shown to Mr. Rizzuto during either of the two days of his deposition. The September 1, 2009 memorandum states that the sales position "is part of the reorganization of the management positions which will give Eric [Redlich] more support in the area of sales as he gets repositioned," that "[m]y goal is to bring this person in as soon as possible and <u>to make the other change we spoke of</u> effective October 1, 2009" and that "[t]he request for this position is part of a reorganization of the management staff." (Exhibit 8) (emphasis added). This is the memorandum to which Mr. Rizzuto was referring in his deposition and which he mistakenly thought he wrote in August 2009.

Mr. Aubrey specifically testified that he searched his files for documents related to plaintiff's termination and the reorganization and that he did not find any documents that were relevant. (Exhibit 2 at 25-28). Mr. Rizzuto testified that he had searched his electronic records for documents related to plaintiff's termination and the reorganization (Exhibit 1 at 16), the most likely location for the alleged August 2009 memorandum that he had thought he wrote, and that he did not consistently maintain hard copy files in his office. (Exhibit 1 at 21). There is no evidence that defendants failed to preserve documents or that Mr. Rizzuto or Mr. Aubrey failed to properly search for documents relevant to this action.[5] In fact the memorandum was found and produced to plaintiff – it is the September 1, 2009 memorandum.

---

[5] The cases cited by plaintiff at page 15 in which "gross negligence" was found are inapposite. See <u>Chan v. Triple 8 Palace, Inc.</u>, 2005 WL 1925579 (S.D.N.Y. Aug. 11, 2011) (gross negligence found where defendants admittedly systematically destroyed evidence in the absence of any form of litigation hold); <u>Chen v. LW Restaurant</u>, 2011 WL 3420433 (E.D.N.Y. Aug. 3. 2011) (gross negligence was found where the defendant admitted that he lost a flash drive central to the case which the Court had repeatedly and previously ordered produced). No destruction of evidence has even been proven by plaintiff and there is no evidence of admitted destruction similar to what occurred in these cases.

As a result, because there is no evidence that any document was actually destroyed,[6] plaintiff's motion in limine for an adverse inference jury instruction should be denied.

## POINT II.

### EVEN IF AN ALLEGED AUGUST 2009 MEMORANDUM DID EXIST, THE EVIDENCE SUGGESTS THAT IT WOULD BE FAVORABLE TO DEFENDANTS AND NOT TO PLAINTIFF'S POSITION

Even assuming for purposes of this motion that an August 2009 memorandum had existed, in the absence of proof that evidence was destroyed willfully, in bad faith, or with gross negligence under sufficiently egregious circumstances, no inference of relevance of the alleged destroyed evidence may be inferred and a party seeking an adverse inference must prove with corroborating extrinsic evidence that the alleged destroyed evidence would have been favorable to him. Giarrizzo v. Holder, 07-CV-0801 MAD/GHL, 2012 WL 716189 (N.D.N.Y. Mar. 5, 2012); Orbit One Communications, Inc. v. Numerex Corp., 271 F.R.D. 429, 439 (S.D.N.Y. 2011) (noting that a finding of gross negligence may be sufficient to support an inference of relevance only if the conduct is sufficiently egregious) (citing cases); Schwarz v. FedEx Kinko's Office, 08 CIV. 6486 (THK), 2009 WL 3459217 (S.D.N.Y. Oct. 27, 2009) (relevance as a matter of law only where the unavailability of evidence stems from a party's egregious conduct).

There is no evidence of any egregious conduct by defendants, as plaintiff suggests, which would relieve plaintiff of his burden of proving that an alleged August 2009 memorandum, even if it had existed, would have been favorable to his claims. While plaintiff speculates that a

---

[6] Plaintiff also has the burden to prove a memorandum was actually destroyed with a culpable state of mind, knowingly or negligently. Zimmerman v. Poly Prep Country Day School, 2011 WL 1429221 (E.D.N.Y April 13, 2011). Plaintiff alleges that destruction can be inferred with a "culpable state of mind" of "at least gross negligence" because Mr. Rizzuto and Mr. Aubrey allegedly did not search their files for the purported August 2009 memorandum. As set forth above, that is not true, they did search their files. Because no document was destroyed, there could be no "culpable state of mind."

90755106.1 - 12 -

memorandum must have been destroyed and was done so with gross negligence because of an alleged failure by Messrs. Rizzuto and Aubrey to search their files, as stated above, Messrs. Rizzuto and Aubrey did search their files for documents relevant to this litigation yet an August memorandum was not located. At worst, plaintiff surmises that defendants deliberately destroyed the alleged August 2009 memorandum because it was not produced. However, it was not produced because it never existed. Plaintiff having failed to demonstrate bad faith or egregious conduct by defendants has the burden to proof the relevance of an alleged August 2009 memorandum to his claims, which he cannot do.

Speculation about documents is not sufficient to establish relevance. Giarrizzo v. Holder, 07-CV-0801 MAD/GHL, 2012 WL 716189 (N.D.N.Y. Mar. 5, 2012) (no adverse inference where there was no evidence of bad faith or intent to destroy documents and plaintiff's speculation about the relevance of documents was insufficient) (citing Pegoraro v. Marrero, 2011 WL 5223652, at *11 (S.D.N.Y. 2011) (the plaintiff's speculation about the content of a personnel folder was insufficient to establish relevance); Sovulj v. United States, 98 CV 5550, 2005 WL 2290495 (E.D.N.Y. Sept. 20, 2005) (denying request for adverse inference because plaintiff's assertion that a missing x-ray was relevant, without any evidence, "is pure speculation."). In addition, the non-production of a document, alone, is insufficient to prove that a document would have been favorable to the plaintiff. See Treppel v. Biovail Corp., 249 F.R.D. 111, 122 (S.D.N.Y. 2008) (denying adverse inference instruction noting that "the only evidence that Plaintiff has adduced suggesting that the unproduced [discovery] would be unfavorable to Defendants is the non-production itself.").

In Scalera v. Electrograph Systems, Inc., 262 F.R.D. 162 (E.D.N.Y. 2009), a disability discrimination case, the Court denied plaintiff's motion for an adverse inference jury instruction

on spoliation because plaintiff failed to submit sufficient extrinsic evidence demonstrating that destroyed emails would have been favorable to her case. The Court noted that the other emails in the record was supportive of defendants' position that it provided the plaintiff with reasonable accommodations and that "plaintiff has produced nothing, aside from speculation, as support for her claim that the destroyed emails would have" supported her position that defendants failed to provide her with a needed accommodation. 262 F.R.D. at 178.

In Giarrizzo, the Court denied plaintiff's motion for an adverse inference jury instruction based on alleged missing evidence noting as follows: "Plaintiff only identifies the alleged missing documents and speculates, without proof, that the documents support his claim. Indeed, plaintiff has not proven that the aforementioned documents exist. Plaintiff's speculation about the content of the transfer files of other agents does not establish that the files were relevant. Without proof that defendant's actions, 'created an unfair evidentiary imbalance, an adverse inference charge is not warranted.'" Id. at *3. See also Toussie v. County of Suffolk, CV 01-6716, 2007 WL 4565160 (E.D.N.Y. Dec. 21, 2007) (denying request for adverse inference instruction for failure to show that destroyed/lost emails were relevant where even though "at least 9% of the back up tapes were destroyed and the plaintiffs may be correct that e-mails have been deleted by users, there is no reason to believe that any of those e-mails would have provided any additional support of plaintiffs' claims.")

Kronisch v. United States, 150 F.3d 112 (2d Cir. 1998), cited by plaintiff at pages 16-17 of his memorandum, does not support his case. In Kronisch, the plaintiff sued the government alleging that he was victim of CIA testing of LSD without his knowledge in Paris in 1952. The government had admitted that it had destroyed documents related to the CIA's study of chemicals on human behavior. The Court found that plaintiff had produced sufficient extrinsic

evidence that the destroyed documents were relevant to his claims which included evidence of the persons in the government with access to LSD, that the CIA had been involved in LSD research at the time plaintiff alleged he was tested and had engaged in similar testing alleged by plaintiff both domestically and overseas as set forth in a U.S. Senate Committee report which reported on various CIA activities concerning its testing. Id. at 129-130. Given this extrinsic evidence, the Court held that plaintiff, at trial, would be entitled to an adverse inference instruction that the destroyed documents would have been relevant to plaintiff's claims. Id. at 130. In contrast, plaintiff in this case had no extrinsic proof that an alleged August 2009 memorandum would have been relevant and favorable to his claims.

Plaintiff speculates that an alleged August 2009 memorandum which Mr. Rizzuto had testified he believed he wrote concerning the need to "terminate or revamp the operation concerning Anthony [Baffo]" could have been "helpful" to his case because the "memo might well have discussed 'revamp[ing] of the facility rather than termination.'" (Plaintiff's memorandum at 17). There is not a shred of evidence which supports plaintiff's theory. Mr. Rizzuto consistently testified that the plan to reorganize the de Seversky included the elimination of plaintiff's position and never testified to a "revamping" which would not have included plaintiff's termination. Similarly, no other witness testified to any plan to reorganize the de Seversky Center which did not include plaintiff's termination. Plaintiff's attempt to parse out Mr. Rizzuto's words to raise an alleged alternative reorganization plan is unsupported by the evidence.

Moreover, the evidence in the record overwhelmingly indicates that an August 2009 memorandum testified to by Mr. Rizzuto, even if it were to have existed, would have been favorable to defendants and not to plaintiff. In that regard, plaintiff grossly overstates the

relevance of an alleged August memorandum. While defendants agree that an important factual issue is whether defendants intended to eliminate plaintiff's position <u>before October 2009</u>, plaintiff completely ignores the documentary evidence in the record from August 2009 and September 2009, which confirms that the decision was made prior to October 2009. In fact, the September 1, 2009 memorandum is the most striking example.

Plaintiff's alleged circumstantial evidence at pages 17-18 of his memorandum ignores the facts and evidence developed during discovery throughout this action. Plaintiff contends that if defendants had wanted to terminate plaintiff in August 2009, it would make no sense to wait until six weeks into new fiscal year to do so. However, the testimony and evidence is consistent that the decision to eliminate plaintiff's position was part of a planned reorganization of the de Seversky Center and that certain steps had to be taken before the plan could be accomplished. This included the desire to hire the dining room captain and catering sales associate which would assist Mr. Redlich in his enhanced duties, as set forth in the September 1, 2009 memorandum. Defendants did, in fact, begin to implement its decision to reorganize the de Seversky Center, which ultimately included the planned elimination of plaintiff's position, in September 2009 as evidenced by the approved recruitment authorizations and job postings on Monster.com for the dining room captain and catering sales representatives. Thus, even though defendants knew by August 2009 that they wanted to eliminate plaintiff's position, his position could not be eliminated instantly in August 2009 before other steps had been taken to prepare for the reorganization. The FY 2010 budget is also consistent with defendants' position that the reorganization would be budget neutral. Finally, it is entirely irrelevant whether Mr. Rizzuto first prepared an updated organization chart reflecting the reorganization until October 2009 as

there is no evidence that such a chart was required in order for defendants to have made their decision for the planned reorganization and elimination of plaintiff's position.

Plaintiff's speculation that a document existed in August 2009 and further speculation, without any support, that such a document would have been favorable to plaintiff, is insufficient to warrant an adverse inference jury instruction.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully submit that plaintiff's motion in limine for a jury instruction on destruction of evidence should be denied in its entirety.

Dated: New York, New York
May 30, 2012

FULBRIGHT & JAWORSKI L.L.P.

By: *Neil G. Sparber*
Douglas P. Catalano
Neil G. Sparber
666 Fifth Avenue
New York, New York 10103
(212) 318-3000
dcatalano@fulbright.com
nsparber@fulbright.com

Attorneys for Defendants

90755106.1

- 17 -